461 So.2d 606 (1984)
Cynthia I. MORRIS
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. CA 83/1390.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
*607 John Dale Powers, Baton Rouge, for plaintiff-appellee.
Samuel R. Cicero, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON,[*] JJ.
GROVER L. COVINGTON, Chief Judge.
This is an appeal by the State of Louisiana, through the Department of Transportation and Development (DOTD), defendant, from a judgment in favor of plaintiff, Cynthia I. Morris, in the amount of $34,232.07, plus interest and costs. The plaintiff has answered the appeal, seeking an increase in the award. We affirm as amended.
The suit was brought by the plaintiff for injuries sustained in a one-car accident allegedly caused by a defective highway of the State.
The uncontroverted facts, as recited by the trial judge, are as follows:
At approximately 2:00 a.m. on July 18, 1982, a foggy night, plaintiff was driving a 1977 Toyota automobile south on La. Highway 1032 in Livingston Parish. As she approached a point approximately .7 (7/10) of a mile south of La. Highway 1034, the road curved in a southeasterly direction. While negotiating the curve, she hit a pothole in her lane of traffic causing the vehicle to veer onto the right shoulder (which was four to six inches below the traveled portion of the road). As plaintiff attempted to steer back onto the roadway, her wheels hit the drop-off, causing her to lose control of the vehicle, which went into a ditch on the right side of the road when she tried to regain entry onto the roadway.
Plaintiff was traveling between 35-40 miles per hour as she approached the curve; however, due to the fog, she was unable to see the sign indicating a curve. She had never driven on the highway before. There were no visible signs to alert her to the drop-off.
R.A. McMorris, Livingston Parish Superintendent for DOTD, testified that roads were inspected once a week, and that he was unaware of any potholes or drop-offs in the highway. From McMorris' testimony, it appears that DOTD did not make an inspection of the area after the accident to determine whether a pothole or drop-off existed. Nevertheless, a "low shoulder" sign was erected on December 20, 1982, to warn southbound motorists of the condition of the shoulder.
The facts show that Ms. Morris inadvertently allowed her car to leave the traveled-portion of the roadway onto a shoulder, which had a four to six inch drop-off, and that she instinctively swerved immediately back onto the roadway in an attempt to reenter the traveled-portion of the roadway. The facts also establish that Ms. Morris was unfamiliar with the shoulder *608 defect and had no reasonable opportunity to avoid straying off the roadway at the point of the sharp drop-off.
In LeBlanc v. State, 419 So.2d 853, 854 (La.1982), our Supreme Court considered whether the motorist's inattention in allowing her vehicle to stray from the roadway onto a low shoulder, followed by her instinctive swerve back onto the roadway precluded her recovery of damages from the State. The Court held that it did not, stating:
The Department's duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp dropoff from the roadway and her consequent instinctive oversteering of her vehicle.
The Court then held:
We are of the opinion that the Department was under a duty to protect this plaintiff from the risk which gave rise to her injuries. One purpose of a highway shoulder is to provide a margin of error for the safety of motorists. A highway without a shoulder or one which never permits safe deviation from the main traffic lanes would be intolerably unsafe. Of course, the duty imposed on the Department is tempered by common sense. As this court held in Sinitiere, [391 So.2d 821 (La.1980)], it does not protect a motorist against a shoulder defect or obstruction of which he had knowledge and a reasonable opportunity to avoid. But in the absence of such knowledge and opportunity, the motorist is entitled to assume that a highway shoulder is maintained in a reasonably safe condition and that his inadvertent deviation onto it will not lead to disastrous consequences. [419 So.2d 856]
On the question of loss of wages, we find that the trial court erred in denying plaintiff's claim in this respect. The plaintiff testified that at the time of the accident, she was a bartender earning a salary of $4.50 per hour. She has been able to work only five weeks since the accident. The record reflects that the plaintiff tried on two occasions to go back to work, but was unable to work due to pain and physical limitations which prevented her from working at her job, although bartender jobs were available if she had been able to work. The plaintiff's testimony regarding her claim for lost wages is uncontroverted. We find that the record established that based on a 40-hour week at the rate of $4.50 per hour, the plaintiff is entitled to recover the sum of $40,000 for lost wages.
Plaintiff also asserts on appeal that the trial court failed to grant a sufficient award for general damages. We agree, and increase the award for general damages to the sum of $125,000.
On July 30, 1982, plaintiff, a 27-year old woman, sought medical attention from Dr. Andrew Kucharchuk, orthopedic surgeon. Plaintiff advised Dr. Kucharchuk that since the accident of July 18, 1982, she was experiencing numbness and tingling in the left hand, pain in the neck and back, headaches and soreness at the breastbone. Dr. Kucharchuk found some motion restriction in the neck, with marked paracervical muscle spasms, diminution of sensation in the bicep muscles and in the hand, some bruising and paraspinous muscle spasms in the back, and tenderness at the breast bone. He assessed her as having a 20% permanent disability.
About a month after the accident, Dr. Owen P. McCutchen, a rehabilitative physician, performed a nerve conduction test on plaintiff's upper extremities, and found that she was suffering from cervical nerve root irritation. Approximately two months after the accident, plaintiff was referred to Dr. George Lohmann, Jr., a neurological surgeon, because of her complaint of constant neck pain. She was hospitalized by Dr. Lohmann who performed a myelogram which evidenced a slight widening and incomplete filling of the nerve root sheaths at the C6-C7 disc space. Dr. Lohmann performed an anterial cervical discectomy and cervical disc fusion. Plaintiff was discharged *609 from the hospital after a 10-day stay.
Plaintiff testified concerning the pain and injuries sustained as a result of the accident and the restrictions placed on her physical activity which resulted from her injuries.
In Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983), plaintiff, a woman of unspecified age, was determined to have a herniated disc requiring a cervical disc fusion. The evidence presented indicated that the plaintiff was unable to remain employed because of pain and discomfort, and that she was slightly limited in her neck movement, with some numbness in her fingers. She was awarded $125,000 in general damages. On review, the appeal court affirmed the award.
In Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir.1983), plaintiff was 27 years old at the time of the accident. As a result of the accident, plaintiff suffered severe trauma to the cervical region and rupture of the intervertebral disc at C4-C5. Tests also revealed a denervation at the C5 level. After the accident, the plaintiff experienced pain in the neck, shoulder and arm. Evidence in the record indicated that plaintiff would suffer a 40-50% permanent functional disability. The trial court awarded damages in the amount of $659,774. Of that amount $359,774 represented the loss of future wages, with $150,000 for permanent disability and $150,000 for pain and suffering. The appellate court upheld the award.
In Villavaso v. State Farm Mutual Automobile Insurance Company, 424 So.2d 536 (La.App. 4th Cir.1982), the court upheld an award of $250,000 to a 29-year old woman who suffered 30% anatomical disability and a permanent 50% functional disability as a result of a neck injury. The appellate court held that the award was not an abuse of discretion.
In Sutton v. Central Gulf Lines, Inc., 433 So.2d 888 (La.App. 5th Cir.1983), a plaintiff of unspecified age (although the decision does reflect that the plaintiff only had an 11 year work-life expectancy) received injuries which resulted in a collapse of a disc space in plaintiff's back. The plaintiff had to undergo a lumbar laminectomy and disectomy, and the medical evidence indicated that a fusion would be necessary. The appellate court upheld an award of $250,000 as general damages.
In light of the above cited cases, it is clear that the trial court's award was so low as to be constitute an abuse of discretion; hence we increase the award for general damages to $125,000, which we find to be the lowest limit that the trial court could have awarded for the extensive and painful injuries sustained by the plaintiff.
For the above reasons, we amend the trial court's judgment to reflect the above increased amounts, and as amended the judgment is affirmed. Costs in the amount of $457.07 are taxed against the defendant.
AMENDED, AND AS AMENDED AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.